# EXHIBIT H

STATE OF NEW YORK        :
SUPREME COURT            :     COUNTY OF ERIE

MARC LASURK as Administrator of the Estate of
RHONDA LASURK

                        Plaintiff

vs.

ABSOLUT CENTER FOR NURSING &
REHABILITATION AT ORCHARD PARK, LLC
ABSOLUT FACILITIES MANAGEMENT, LLC
and
ISRAEL SHERMAN

                        Defendants

**PLAINTIFF'S EXPERT DISCLOSURE**

Index #805925/2016

The following is submitted with respect to the CPLR 3101(d) Expert Disclosure request of Defendant ISRAEL SHERMAN, who individually owned, operated, managed, directed, administered, and/or assumed responsibility for the nursing home facility, Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC, and its agents, servants, employees, and/or other resident care personnel, and, therefore, is/was a controlling person, pursuant to New York State Public Health Law §2808-a, of the nursing home facility known as Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC.

Accordingly, Plaintiff, MARC LASURK as Administrator of the Estate of RHONDA LASURK, by and through his attorneys BROWN CHIARI LLP hereby responds to said Defendant ISRAEL SHERMAN's request for CPLR 3101(d) Expert Disclosure as follows:

## I. EXPERT WITNESS NO. 1 – Luigi M. Capobianco M.D.:

(a) <u>Subject Matter:</u>

Plaintiff's expert will testify concerning the subject matter of the nursing home care and services rendered by Defendant ISRAEL SHERMAN's facility to plaintiff's decedent, Rhonda LaSurk.

(b) <u>Substance of Facts and Opinions:</u>

The substance of the facts and opinions upon which plaintiffs' expert will testify are that the skilled nursing facility care and services rendered to the plaintiff by Defendant ISRAEL SHERMAN's facility, were negligent and substandard and not in accordance with accepted standards of nursing home care and treatment and violated Federal and State statutes and regulations.

Dr. Capobianco is expected to testify with respect to the cause of the injuries sustained by decedent, Rhonda LaSurk, as set forth in Plaintiff's Bill of Particulars and medical records, and the sequalae thereof. Dr. Capobianco will testify that Ms. LaSurk was diagnosed with a left ischial pressure ulcer on December 29, 2013; a right foot pressure ulcer on October 29, 2014; left foot pressure ulcer on November 29, 2014 and

right heel pressure ulcer on February 9, 2014. Dr. Capobianco will testify that decedent's pressure ulcers were caused by unrelieved/unrelenting pressure and lack of adequate and proper skin/wound care, was severely painful and debilitating, necessitated hospitalization/urgent medical care, and was the direct result of the negligence of Defendant ISRAEL SHERMAN's facility in deviating from accepted nursing home standards of care. Dr. Capobianco will state that at decedent's initial admission to the Defendant ISRAEL SHERMAN's facility on October 21, 2013, she did not have any identifiable pressure ulcers, and that decedent was subsequently caused to develop five (5) pressure ulcers that included a stage IV right ischium pressure ulcer; stage IV right plantar foot pressure ulcer with bone exposure and stage III left medial foot pressure ulcer during subject residency.

Further, Dr. Capobianco will state that the progression of the pressure ulcers, their increase in size and severity, necrotic tissue of same, development of infection by the decedent resulting in her ultimate death was also the direct result of negligence of Defendant ISRAEL SHERMAN's facility in deviating from accepted nursing home standards of care. Dr. Capobianco will discuss the failure of Defendant ISRAEL SHERMAN's facility to provide adequate and proper clinical care and nursing services to prevent the development of otherwise avoidable pressure ulcers; failure to develop an adequate and proper plan of care for decedent upon her admission to subject facility and/or failure to provide services in accordance with decedent's established care plan;

and failure to revise said care plan to reflect the changing needs of decedent during subject residency. Dr. Capobianco will highlight the fact that decedent was admitted to the Defendant ISRAEL SHERMAN's facility for long-term care and services following an admittance to TLC Health Network for long-term care due to a diagnosis on multiple sclerosis. Dr. Capobianco will state that increased surveillance, vigilance and protection by Defendant ISRAEL SHERMAN's facility was of the utmost importance to prevent skin breakdown, due to decedent's immobility. Dr. Capobianco will explain the interventions necessary to prevent pressure ulcers including but not limited to turning and positioning, off-loading; floating; and use of specialty equipment, mattresses and pillows as well as good nutrition and skin care. Dr. Capobianco will testify that the chart lacks documentation to support that staff performed pressure relief interventions while caring for the decedent.

Dr. Capobianco will discuss treatment required for the pressure ulcers, and increased pain and suffering endured by the decedent due to said pressure ulcers. Dr. Capobianco will set forth that Defendant ISRAEL SHERMAN's facility additionally failed to adequately meet decedent's nutritional needs and/or failed to properly monitor plaintiff's albumin (protein) levels during subject residency, and failed to provide appropriate services in order to increase and maintain said protein levels to effectuate the healing of decedent's pressure ulcers. Dr. Capobianco will testify that as a result of the deviations of Defendant ISRAEL SHERMAN's facility, decedent's pressure ulcers

became severely necrotic and infected. Dr. Capobianco will also discuss the fact that the decedent was immobile and totally reliant upon facility staff for pressure relief. Dr. Capobianco will reiterate that decedent's pressure ulcer resulted in severe conscious pain and suffering, and he will testify that decedent's pressure ulcers were preventable.

Dr. Capobianco will further opine that the negligence/failures of Defendant ISRAEL SHERMAN's facility during decedent's admission from October 21, 2013 through January 29, 2015 not only prevented the decedent from receiving therapies and caused a compromise of her overall health and system resulting in stress on her organs causing additional (and preventable) serious injuries, which were an additional and significant insult upon decedent's general health, and ultimately caused her death. Dr. Capobianco is expected to testify that timely intervention would have prevented the injuries suffered; progression of the pressure ulcers and malnutrition/protein deficiency.

Further this expert will testify that even though the staff of Defendant ISRAEL SHERMAN's facility was aware of decedent's past medical history and general health condition the nursing home staff failed to implement any pressure relief intervention for the decedent PRIOR to her developing her first pressure ulcer on December 29, 2013; failed to perform a repeat Braden after the day of admission, even though the decedent had developed a pressure ulcer; failed to document turning and positioning changes or incontinent care every two hours; failed to document weekly skin checks.; failed to document the appearance of the wounds on the decedent during subject residency; failed

to document the stage or condition of the pressure ulcers upon transfer to the Hospice on January 29, 2015; failed to take due cognizance of the significance of the change in the decedent's condition; and failed to send the decedent out to the hospital sooner.

Dr. Capobianco will also testify that the conduct of Defendant ISRAEL SHERMAN toward the decedent was willful and reckless in failing to adequately staff subject facility, failing to properly supervise staff/employees at subject facility, and failing to ensure that adequate and proper policies and procedures were established, promulgated, effectuated and/or followed at subject facility, most significantly to prevent decedent from incurring otherwise avoidable injuries.

This expert will also discuss the anatomy of the human body, its structures and predispositions, how pressure ulcers develop, the stages, infection, treatment and effect on the general health of an individual. This expert will further testify consistent with Plaintiff's Bill of Particulars as respects the violations of Federal and New York State Public Health Law §§2801-d and 2801-c as well as Nursing Home Regulations in that Defendant ISRAEL SHERMAN denied the Decedent's rights and benefits pursuant to State and Federal regulations and pursuant to the admission contract (as more specifically delineated herein below), resulting in physical harm, emotional harm to the Decedent; Public Health Law §2803-c, in that decedent was neglected and/or mistreated and, more specifically, in that Defendant ISRAEL SHERMAN failed to provide appropriate staff training to ensure that decedent's rights were not violated; Public Health Law §2803-d, in

that Defendant ISRAEL SHERMAN's facility failed to establish an adequate and proper care plan for decedent, and failed to update decedent's care plan to address her changing clinical needs throughout the duration of her residency; 42 CFR §483.10(b)(11), in that Defendant ISRAEL SHERMAN's facility failed to report significant changes in decedent's condition to her responsible party/family (most significantly, pressure ulcers which developed on decedent's left ischium, right foot, left foot, right heel and left heel); 42 CFR §483.13(c), in that Defendant ISRAEL SHERMAN's facility failed to provide necessary services to avoid physical harm to decedent (most specifically, skin/wound care and services (including prophylactic care) to prevent the development of avoidable pressure ulcers (such as that experienced by decedent); 42 CFR §483.15, in that Defendant ISRAEL SHERMAN's facility failed to care for decedent in a manner in which promoted and/or enhanced her quality of life, and failed to promote care for decedent to maintain decedent's dignity; 42 CFR §483.20(d)(3), in Defendant ISRAEL SHERMAN's facility failed to update and/or to revise decedent's care plan to address her changing clinical needs throughout the duration of subject residency (most specifically to address the development of otherwise avoidable pressure ulcers); 42 CFR §483.25(a)(3), in that decedent failed to receive necessary daily services to maintain her grooming and personal hygiene (specifically, in that decedent was often found unkept, and soaked in urine); 42 CFR §483.25(c)(1), in that Defendant ISRAEL SHERMAN's facility failed to prevent the development of otherwise avoidable pressure ulcers on the left ischium, right

foot, left foot, right heel and left heel; 42 CFR §483.25(c)(2), in that Defendant ISRAEL SHERMAN's facility failed to provide decedent with necessary care and services to promote the healing and prevent infection of pressure ulcers on decedent's left ischium, right foot, left foot, right heel and left heel ; 42 CFR §483.30, in that Defendant ISRAEL SHERMAN's facility failed to have sufficient nursing staff to provide nursing and related services in accordance with decedent's care plan, as evidenced, most significantly, by the fact that decedent was caused to develop otherwise avoidable and severe skin breakdown/pressure sores on her left ischium, right foot, left foot, right heel and left heel , was caused to incur an otherwise avoidable decease in her ability to ambulate; 10 NYCRR 415.1 (b)(1), in that Defendant ISRAEL SHERMAN's facility failed to provide nursing home care and services in a manner and quality consistent with generally accepted standards of care, as evidenced, most significantly, by the fact that decedent was caused to develop otherwise avoidable and severe skin breakdown/pressure sores, was caused to incur an otherwise avoidable decease in her ability to ambulate; 10 NYCRR 415.3 (a), in that Defendant ISRAEL SHERMAN's facility failed to ensure a dignified existence to decedent; 10 NYCRR 415.5(a), in that Defendant ISRAEL SHERMAN's facility failed to ensure an appropriate quality of life for said decedent by deprivation of decedent's dignity; 10 NYCRR 415.11, in that Defendant ISRAEL SHERMAN's facility failed to develop and <u>keep current</u> a comprehensive care plan to meet decedent's needs; 10 NYCRR 415.11(c)(3), in that Defendant ISRAEL SHERMAN's facility failed to

provide and/or arrange services that met generally accepted standards of care provided by qualified persons in accordance with decedent's care plan, as evidenced, most significantly, by the fact that decedent was caused to develop otherwise avoidable and severe skin breakdown/pressure sores on her left ischium, right foot, left foot, right heel and left heel; 10 NYCRR 415.12, in that Defendant ISRAEL SHERMAN's facility failed to provide the highest practicable physical, mental and psycho-social well-being for decedent; 10 NYCRR 415.12 (c)(2), in that Defendant ISRAEL SHERMAN's facility failed to provide decedent with necessary care and services to promote the healing and prevent infection of pressure ulcers on decedent's left ischium, right foot, left foot, right heel and left heel; 10 NYCRR 415.13, in that Defendant ISRAEL SHERMAN's facility failed to provide sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of decedent, as evidenced by the fact decedent was caused to develop otherwise avoidable and severe skin breakdown/pressure sores on her left ischium, right foot, left foot, right heel and left heel; 10 NYCRR 415.15(b)(3), in that proper communication/ "working relationships" were not established between nursing staff and other departments/ services and/or disciplines, to assure that all patient care needs were met; and 10 NYCRR 415.22(a), in that Defendant ISRAEL SHERMAN's facility failed to keep complete, accurate and consistent clinical records, most significantly with regard to the existence

and condition/ "staging" of decedent's multiple, evolving presure ulcers, and skin/wound care services allegedly provided to decedent.

Dr. Capobianco is also expected to comment upon and respond to defense experts' opinions and theories. This summary is meant to only be a general outline of the anticipated testimony of Dr. Capobianco.

(c) Qualifications:

Dr. Capobianco is a licensed and Board Certified physician in the State of New York. Dr. Capobianco completed his residency in family practice at Community Hospital at Glen Cove located in Glen Cove, New York in 1988. He is currently the Chief of Geriatrics at Glen Cove Hospital in Glen Cove, New York. He is also currently an Attending Physician at Cold Spring Harbor Nursing Facility in Woodbury, New York and an Assistant Clinical Professor of Family Medicine and Practice at Hofstra University School of Medicine.

(d) Summary of Grounds:

This expert has formulated opinions based upon his knowledge and experience and a review of the medical records, nursing home records, incident reports, diagnostic test results, depositions, pleadings, facility policies, and discovery exchanged during the court of this action.

## II. EXPERT WITNESS NO. 2 – Charlotte Sheppard, R.N., B.C., B.S.N.:

(a) Subject Matter:

Plaintiff's expert will testify concerning the subject matter of the nursing home care and services rendered by Defendant ISRAEL SHERMAN's facility to plaintiff's decedent, Rhonda LaSurk.

(b) Substance of Facts and Opinions:

The substance of the facts and opinions upon which plaintiffs' expert will testify that the care and services provided by Defendant ISRAEL SHERMAN's facility to the decedent, Rhonda LaSurk, fell below and/or deviated from acceptable standards of nursing home care and violated Federal and State Statutes and Regulations.

Specifically, this expert will testify that the nursing home care and services provided to decedent at Defendant ISRAEL SHERMAN's facility failed to meet accepted standards of care, and that Defendant ISRAEL SHERMAN's facility failed to follow and/or negligently deviated from its own policies and procedures relative to pressure ulcer prevention and care, thus allowing decedent's pressure ulcer(s) to develop and worsen. She will testify that the Defendant ISRAEL SHERMAN's facility failed to appropriately turn and position decedent, failed to monitor and assess decedent's skin integrity and, subsequently, to adequately, properly, and consistently evaluate, assess, and

document the condition of decedent's skin/ulcers, and failed to provide adequate and proper skin services to the decedent.

Further, Ms. Sheppard will also discuss decedent's immobility/total reliance upon Defendant ISRAEL SHERMAN's staff for pressure relief, as well as the fact that Defendant ISRAEL SHERMAN's facility knew, or should have known, that decedent was at an increased risk for the development of pressure ulcers if adequate and proper preventative measures/interventions were not initiated by subject facility.

Further, Ms. Sheppard will discuss the inadequacy of the nursing notes including, but not limited to, accurate and consistent documentation of the condition of decedent's pressure ulcers, appropriate assessment of pressure ulcers, failure to stage ulcers, appearance, treatment and condition of ulcers, while also failing to respond to signs of infection and worsening of the ulcers in a timely and appropriate manner.

Further, Ms. Sheppard will discuss failure of Defendant ISRAEL SHERMAN's facility to enact and follow appropriate infection control procedures, leading to a stage IV right ischium pressure ulcer; stage IV right plantar foot pressure ulcer with bone exposure and stage III left medial foot pressure ulcer resulting in severe infection. This expert will discuss past deficiencies and pattern of inappropriate pressure ulcer prevention and infection control at Defendant ISRAEL SHERMAN's facility.

Further, Ms. Sheppard will testify relative to the pattern of Defendant ISRAEL SHERMAN's facility for failing to properly ensure that decedent did not develop

pressure ulcers. She will testify that Defendant ISRAEL SHERMAN's facility failed to ensure that adequate and proper pressure ulcer prevention and/or wound care policies and procedures were promulgated and/or consistently followed at said facility, all to decedent's detriment.

Lastly, Ms. Sheppard will testify with regard to decedent's injuries, and the effect that said injuries had upon plaintiff's decedent. She will also testify in accordance with the alleged negligence and injuries set forth in Plaintiff's Bill of Particular and medical records. She will testify that the injuries sustained by Rhonda LaSurk, as set forth in the Plaintiff's Bills of Particulars and medical records, were caused by the negligence and willful and reckless conduct of Defendant ISRAEL SHERMAN's facility. In reaching her opinions, Ms. Sheppard reviewed medical records, as well as deposition transcripts and documents exchanged during discovery including, but not limited to, policies and procedures of Defendant ISRAEL SHERMAN's facility. She will also rely upon any testimony and other evidence produced at trial. Ms. Sheppard will further testify based upon her experience in the nursing field.

Ms. Sheppard is also expected to comment upon and respond to defense experts' opinions and theories. This summary is meant to only be a general outline of the anticipated testimony of Ms. Sheppard.

(c) Qualifications:

Ms. Sheppard received an LPN Degree from the Health Institute of Tampa Bay, an Associate's Degree in Nursing from Regents College, and a Bachelor's of Science Degree in Nursing from the University of Tampa. Ms. Sheppard is a member of the International Honor Society of Nursing of Sigma Theta Tau, Delta Beta Chapter, and is a member of the American Nurses Association. She is currently a Registered Nurse and holds a specialty certificate as an administrator for long-term care assisted living facilities. She is Board certified in Gerontology through the American Nurses Credentialing Center of the American Nurses Association. Ms. Sheppard currently provides direct long-term nursing care to geriatric patients in the long term care setting at Baldomero Lopez State Veterans Nursing Home in Land O'Lakes Florida. Ms. Sheppard is also a clinical instructor of nursing at the Health Institute where she instructs practical nursing students and registered nursing students in the care of patients with a focus in long-term care/nursing home environments.

(d) <u>Summary of Grounds:</u>

This expert has formulated opinions based upon a review of the medical records, nursing home records, incident reports, diagnostic test results, depositions, pleadings and other discovery exchanged during the court of this action.

DATED: Buffalo, New York
November 12, 2019

_____
Michael C. Scinta, Esq. for
**BROWN CHIARI** LLP
**Attorneys for Plaintiff**
2470 Walden Avenue
Buffalo, New York 14225-4751
(716) 681-7190

TO: KAUFMAN BORGEEST & RYAN LLP
**Attorneys for Defendant**
**ISRAEL SHERMAN**
701 Seneca Street
Suite 710N
Buffalo, NY 14210
(716) 246-4640