**LOEB & LOEB LLP**
Schuyler G. Carroll
William M. Hawkins
Evan K. Farber
Mary Jean Kim
345 Park Avenue
New York, NY 10154
Tel: (212) 407-4000
Fax: (212) 407-4990
Email: scarroll@loeb.com
　　　　whawkins@loeb.com
　　　　ekfarber@loeb.com
　　　　mjkim@loeb.com

*Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Absolut Facilities Management, LLC, *et al*.<br><br>　　　　　　　Debtors.[1] | Chapter 11<br><br>Case No. 19-76260 (AST)<br>Case No. 19-76263 (AST)<br>Case No. 19-76267 (AST)<br>Case No. 19-76268 (AST)<br>Case No. 19-76269 (AST)<br>Case No. 19-76270 (AST)<br>Case No. 19-76271 (AST)<br>Case No. 19-76272 (AST)<br><br>(Jointly Administered) |

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Absolut Facilities Management, LLC (1412); Absolut Center for Nursing and Rehabilitation at Allegany, LLC (7875); Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC (8266); Absolut Center for Nursing and Rehabilitation at Gasport, LLC (8080); Absolut at Orchard Brooke, LLC (1641); Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC (8300); Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC (8133); and Absolut Center for Nursing and Rehabilitation at Westfield, LLC (7924).

18618328

|  |  |
|---|---|
| Absolut Facilities Management, LLC, et al., | )<br>)<br>) |
| Plaintiffs, | ) Chapter 11<br>) |
| v. | ) Case No. 19-76260-ast<br>) Case No. 19-76263-ast |
| Mark LaSurk, as Administrator of the Estate of Rhonda LaSurk, | )<br>) Adv. Pro. No. 8:19-AP-08155 |
| Defendant. | )<br>)<br>) |

**REPLY DECLARATION OF MICHAEL WYSE IN SUPPORT OF DEBTORS' MOTION TO ENFORCE THE AUTOMATIC STAY AND FOR A PRELIMINARY INJUNCTION**

I, Michael Wyse make this declaration under 28 U.S.C. § 1746 (the "**Declaration**"):

1. I am over the age of 18. I make this Declaration in further support of the Motion submitted by Absolut Facilities Management, LLC ("**Absolut Management**") and its affiliated debtor entities (collectively, the "**Absolut Facilities Operators**" and each an "**Absolut Facilities Operator**"),[2] as debtors and debtors-in-possession (collectively, the "**Debtors**" and each a "**Debtor**") in the above-captioned jointly administered Chapter 11 cases (the "**Chapter 11 Cases**") for a preliminary injunction barring prosecution of the state court action entitled *LaSurk v. Absolut Facilities Mgmt., LLC, Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC*, *et al.*, Index No. 805925/2016, (Sup. Ct. Erie Cty.) (hereinafter the "**LaSurk Action**") by plaintiff

---

[2] The Absolut Facilities Operators are the following Debtors: Absolut Center for Nursing and Rehabilitation at Westfield, LLC, Absolut Center for Nursing and Rehabilitation at Allegheny, LLC, Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC, Absolut Center for Nursing and Rehabilitation at Gasport, LLC, Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC, Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC, and Absolut at Orchard Brooke, LLC

therein ("**Plaintiff**") as against defendant Israel Sherman ("**Mr. Sherman**") (Docket No. 2), and in response to Plaintiff's Opposition to the Debtors' Motion (Docket Nos. 8 and 9).[3]

2. I am the Chief Restructuring Officer of the Debtors and I report directly to Mr. Sherman. I was the declarant in support of the Debtors' Chapter 11 petitions and incorporate by reference the facts set forth in my previously submitted declarations (submitted at Docket No. 2-1 and Chapter 11 Docket Nos. 15, 20, 57, 68, 97) as if fully set forth herein. I am knowledgeable and familiar with the Debtors' day-to-day operations, business and financial affairs, books and records, and the circumstances leading to the commencement of these Chapter 11 Cases.

3. Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by employees of the Debtors or the Debtors' advisors, or my opinion, which itself would be based on my experience, knowledge, and information concerning the Debtors' operations. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

### MR. SHERMAN'S CONTINUED INVOLVEMENT IS NECESSARY TO A SUCCESSFUL SALE OF THE DEBTORS' ASSETS AND THE DEBTORS' EMERGENCE FROM CHAPTER 11

4. Mr. Sherman's cooperation, dedication and assistance is critical to the sale of substantially all of the Debtors' assets pursuant to the recently approved bidding procedures (the "**Bidding Procedures**"). (Ch. 11 Docket No. 323). As it currently stands, the Debtors have received *one bid* for their operational assets. This offer is due, in large part, to Mr. Sherman's daily oversight of the Debtors' operations and management, and his collaborations with key

---

[3] Unless otherwise noted, capitalized terms not defined herein are defined in the Memorandum of Law filed in support of the Motion (the "Moving Brief" or "Mov. Br.," Docket No. 5 in this Adversary Proceeding). Citations to the Chapter 11 docket are herein referenced as "Ch. 11 Docket No."

personnel such as Lorry Dotter, Chief Operating Officer, and Phillip Hoffman, Chief Financial Officer.

5. Although Plaintiff asserts that Mr. Sherman stands to be compensated in the amount of $592,500, under the current and only offer for the Debtors' assets, Mr. Sherman is not entitled to any payment at all. While the approved settlement agreement among the Debtors, the Debtors' landlords and Mr. Sherman (Ch. 11 Docket No. 332, the "**Settlement Agreement**") would permit Mr. Sherman to receive payment in relation to an asset sale, the terms expressly offered do not permit that payment. Further, even if the pending offer did provide for payment to Mr. Sherman, he would not receive any payment for a minimum of 18 months, due to the length of the change of ownership ("**CHOW**") process in the proposed transaction (or, likely, any other).

6. Even assuming the sale of the Debtors' assets proceeds without any interference or unexpected complications, Mr. Sherman's time and attention will be required almost full time to assist with additional due diligence and regulatory approvals for the prospective purchaser or purchasers until the completion of the CHOW, likely to take another 18 months. It is of no consequence that the Orchard Park Facility has closed because there are still numerous matters to be addressed in the wind down of other Orchard Park assets, including receivables. As just one example, Mr. Sherman's assistance is required in connection with the Landlord's recent motion to lift the stay concerning the Orchard Park lease. *See* Ch. 11 Docket No. 336.

7. Mr. Sherman's undivided attention is also needed for the Debtors to develop a confirmable Plan and successfully emerge from Chapter 11. In fact, mere days ago, the Debtors met with the Landlord and the Committee at which time we discussed the terms of the Plan at length. Provided the sale is consummated, within 30 days, the Debtors aim to file a Plan to be

confirmed by March 30, 2020. That process has and will continue to demand much of Mr. Sherman's time.

8. Requiring any single individual to carry out these responsibilities—including management support, bidding support, sales process, and Chapter 11 Plan development—would be more than a full-time job. Yet Mr. Sherman is performing all of these duties simultaneously. Without Mr. Sherman's involvement, a confirmable Plan and the Debtors' emergence from Chapter 11 will not be possible. Any significant distraction of Mr. Sherman or his inability to dedicate the extensive time necessary would also place at serious risk any sale, a Chapter 11 Plan and its confirmation, and, more generally, the Debtors' successful emergence from Chapter 11.

### **THE LASURK ACTION WILL DEPLETE THE DEBTORS' INSURANCE COVERAGE**

9. Mr. Sherman is a co-insured under the Debtors' relevant insurance Policy which covers the costs of defense and any judgments (up to the Policy limit) from claims arising from events that have occurred at the Facilities. As such, the Debtors reported to the insurer the numerous pre-petition state court lawsuits filed against the Debtors as "Claims" under the Policy, and engaged the firm of Kaufman Borgeest & Ryan LLP to provide a defense. The LaSurk Action was included as a "Claim."

10. Allowing the LaSurk Action to proceed against Mr. Sherman will place the Debtors in an impossible position, and the Debtors will suffer irreparable harm regardless of whether the insurer covers his litigation costs or denies coverage under the Policy.

11. On the one hand, if the insurer agrees to tender a defense under the Policy, then any payment in defending or covering Mr. Sherman under the Policy will deplete the Debtors' insurance coverage and in turn, the Debtors' estates. Additionally, if the LaSurk Action were to result in a significant judgment above the Policy amount then the Debtors' estates would be further depleted.

12. On the other hand, if the insurer denies the Claim and refuses to cover costs, Mr. Sherman will likely file an administrative claim against the Debtors and demand the Debtors fund his defense in the LaSurk Action. (Mr. Sherman says he is unable to pay his own costs). This would necessitate the Debtors to pay to defend Mr. Sherman in the LaSurk Action *now*, if he is to mount any defense. If the Debtors cannot or do not provide for Mr. Sherman's defense, Mr. Sherman would likely be left undefended in the LaSurk Action, and at least two distinct disadvantages would likely ensue. First, a significant judgment would likely be entered against him, which, in turn, would subject one or more of the Debtors to potential exposure on their indemnification obligations to Mr. Sherman (or at least require the Debtors to spend money defending that indemnification claim). Second, the failure to mount any defense on Mr. Sherman's behalf could cause the insurer to argue that the Policy was breached, resulting in a denial of coverage. *See* December 17, 2019 Wyse Decl. ¶ 27, Ex. J (Policy), at §§ I.7 (Duty to Defend); III.G (Assistance and Cooperation). Of course, this outcome would further burden the Debtors' estates.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 10, 2020
      New York, New York

                                         */s/ Michael Wyse*
                                         Michael Wyse
                                         Chief Restructuring Officer